2019 IL App (2d) 170691-U
No. 2-17-0691
Order filed November 13, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-2000 |
| ASAEL NAVARRETTE-HERRERA, | ) ) | Honorable Daniel B. Shanes, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Birkett and Justice Burke concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court did not abuse its discretion in sentencing defendant to a total of 30 years' imprisonment for various sex offenses: defendant's expressions of remorse were not strong, the lack of physical harm to the victim was unremarkable given the nature of the offenses, and his lack of a prior record was outweighed by his pattern of abuse of the victim.

¶ 2   After a bench trial, defendant, Asael Navarrette-Herrera, was convicted of two counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(3) (West 2016)), two counts of aggravated criminal sexual abuse (*id.* § 11-1.60(d)), and one count of child pornography (*id.* § 20.1(a)(4)). The trial court sentenced defendant to consecutive 10-year prison terms for criminal sexual assault;

concurrent 6-year prison terms for aggravated criminal sexual abuse, to be served consecutively to the other sentences; and a 4-year prison term for child pornography, to be served consecutively to the foregoing sentences. Thus, the aggregate prison term was 30 years. The court denied defendant's motion to reconsider his sentences, and he timely appealed. On appeal, defendant contends that his sentences are excessive. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The State filed an 18-count indictment against defendant. Counts I-XV charged criminal sexual assault based on five separate acts, with three theories for each act. Each count alleged that defendant inserted his penis into the mouth of his minor stepdaughter, P.C.H. Counts XVI and XVII alleged that he committed aggravated criminal sexual abuse by touching the breasts and vagina, respectively, of P.C.H. Count XVIII alleged that he committed child pornography by knowingly soliciting her to appear in a photograph or other visual medium involving a lewd exhibition.

¶ 5     We summarize the pertinent trial evidence. P.C.H. testified as follows. She was born January 16, 2001. Defendant was her stepfather. She resided with her mother and little brother, but defendant had not lived with them since 2016.

¶ 6     P.C.H. testified that she had had several instances of sexual contact with defendant. She had touched his penis with her mouth. He had touched her breasts and vagina over her clothing about five times; sometimes he touched her breasts or her vagina, and sometimes both.

¶ 7     P.C.H. described one time that defendant put his penis into her mouth. The date was July 13 or 14, 2016.[1] She entered his bedroom and sat in the corner. She was fully clothed. Defendant

_____

    [1] According to other evidence at trial, the video was recorded July 12, 2016.

was wearing a shirt and shorts. P.C.H. carried an iPad. She did so at the request of her friend Jose, who wanted her to take a video so that defendant would go to jail. Because defendant had previously touched her private parts, P.C.H. believed that he would "accept" oral sex. As P.C.H. sat on the bed, she started hugging defendant and he started hugging her. He pulled down his shorts, and she put her mouth over his penis. At this point, unbeknownst to defendant, she started the videotaping. Her mouth was on his penis for almost a minute. During the encounter, she told him that they should not be doing this; then she pushed him away and left the room. She then sent Jose the video.

¶ 8    The court admitted the video into evidence and played it. We shall describe the video in our discussion of the issue on appeal.

¶ 9    P.C.H. testified about the other times that defendant had touched her sexually. The first was when she was nearly 15. She was in bed. Defendant entered and grabbed her, then touched her breast. The second time was when they were in Florida; he touched her breasts and vagina several times. The third time, as they were on their living room couch playing a game on his cell phone, he grabbed her vagina; she moved away. The fourth time was about a month before her fifteenth birthday. She was home on vacation. After her mother had left to take her brother to school, defendant entered her room and touched her breast. The fifth time was during the incident of July 13 or 14, 2016, when, in addition to having her perform oral sex on him, defendant touched her breasts and vagina. Once, when the family was in Chicago, defendant tried to kiss her.

¶ 10    P.C.H. testified that on July 25, 2016, she spoke to Lynn Aladeen at the Children's Advocacy Center. The court played a videotape of the interview. In the interview, P.C.H. described the incident that she videotaped earlier that month. She also told Aladeen that she had put defendant's penis into her mouth more than 10 times. All were during her freshman year, with

the videotaped incident being the final one. Asked whether she recalled the dates of any of the other incidents, P.C.H. said that one occurred on July 4, 2016. She told Aladeen that, before she started her freshman year, defendant had limited himself to touching her breasts and vagina. At some point, when they were in Chicago, defendant asked her to kiss him, but she refused.

¶ 11    P.C.H. told Aladeen that, about eight months before the interview, defendant asked her to take a picture of her vagina and send it to him. She refused his request and numerous similar ones thereafter. Also, about eight months before the interview, defendant showed her an explicit video on his phone and told her that he wanted them to act like the people in the video.

¶ 12    P.C.H. testified that in 2017 she spoke to defendant's lawyers and wrote a statement saying that defendant put his penis into her mouth only once and touched her sexually only twice. She also admitted to the lawyers that she had lied to Aladeen about these matters.

¶ 13    Irma Fierros, a community service officer with the Vernon Hills police department, testified that on July 25, 2016, she assisted Adam Boyd, a police detective, in interviewing defendant. The interview was recorded. Defendant spoke primarily in Spanish, and Fierros translated. At the end of the interview, defendant wrote a statement, which Fierros translated. The court admitted the translated statement into evidence.

¶ 14    Boyd testified as follows. In mid-July 2016, Boyd received the videotape of P.C.H. and defendant and copied it. He then visited P.C.H.'s home and drove her to the Children's Advocacy Center. There, he watched Aladeen's interview of P.C.H. Next, Boyd drove back to the home, where he spoke to defendant. Later that day, he interviewed defendant at the station, with Fierros translating.

¶ 15    Boyd testified that, in the interview, defendant initially denied that he had had any inappropriate contact with P.C.H. Eventually, he said that, in the videotaped July 2016 incident,

she came on to him sexually. He said that she entered the room and began to put his penis into her mouth, but he immediately rebuffed her and told her not to do that type of thing. Boyd described the acts depicted in the video and asked defendant whether there had ever been an encounter that matched that description. Defendant said no. Boyd then played the video for defendant. Defendant identified himself and P.C.H. in the video. He said that she had come on to him sexually and that he had weakened and given in.

¶ 16    Boyd testified that he told defendant that he knew he had had P.C.H. perform oral sex on him 10 times. Defendant responded that he had put his penis into her mouth about five times. He said that he never forced her; she always approached him. He described her as very willing and sexually curious. Defendant said that these encounters began when she was approximately 14. He said that he once asked P.C.H. to send him a picture of her naked but that she did not do it. He admitted that he had touched her breasts and vagina before.

¶ 17    Boyd testified that he replayed the video. He pointed out that P.C.H. was saying no and gagging, and he asked defendant whether that indicated that she was not a willing participant. Defendant "didn't really have much of a response." After the interview ended, defendant wrote out a statement. The court admitted a recording of the interview and played it.

¶ 18    We note further the following about the videotaped interview. Boyd pressed defendant several times on whether he could recall the dates of the incidents, other than the videotaped one, on which P.C.H. performed oral sex on him. Boyd mentioned July 4, 2016, specifically. Defendant did not recall any such thing happening on July 4, 2016, and he did not give any specific dates for any incidents. He did recall one incident occurring in his car and another in the cellar of their home. Shown the video of the last incident, defendant admitted that he pushed P.C.H.'s head forward to force his penis into her mouth and that she said "no" three times.

¶ 19    The court admitted a copy of defendant's statement, as translated by Fierros. It said that he "want[ed] to confess" that he had "sexually offended" P.C.H. for a year, during which they kissed, had oral sex, and hugged. He asked forgiveness from his wife, his children, and his family, and he wrote, "I [accept] responsibility."

¶ 20    The State rested. Defendant put on no evidence.

¶ 21    The court found defendant guilty of two counts of aggravated criminal sexual abuse (one for touching the breasts, the other for touching the vagina); six counts of criminal sexual assault, based on two separate acts (the videotaped incident and the July 4, 2016, incident); and one count of child pornography (based on defendant's admission that he solicited an explicit photograph of P.C.H.). The court entered judgment on two of the counts of criminal sexual assault and the remaining three counts.

¶ 22    The cause proceeded to sentencing. The presentencing investigation report (PSIR) revealed that defendant had no juvenile adjudications, criminal convictions, or other pending charges. He had married his current wife in 2015, and they had one child together. Defendant owned and operated a cleaning company.

¶ 23    At the sentencing hearing, defendant spoke in allocution. In his statement (as translated), he asked forgiveness from his wife and family. He added, "So—and what happened, it came out of my hands. Nobody's perfect. We all make mistakes."

¶ 24    The State requested that the court impose an aggregate sentence of 40 years or more. The State noted that the sentence for child pornography was mandatorily consecutive, as were those for criminal sexual assault. The State argued that defendant had not accepted the blame for his offenses but had shifted the blame to the child, who had been under his supervision and authority. Moreover, the videotaped sexual assault had not been her choice: the tape showed her crying and

gagging as defendant forced his penis into her mouth.  Further, she was facing long-term effects from the pressure that she had been under in reporting and pursuing the charges.

¶ 25    Defendant requested an aggregate sentence of 15 to 18 years.  He argued that he had admitted his wrongdoing and shown remorse for his acts.  Moreover, he had no prior offenses or adjudications and he had had no disciplinary problems in jail.

¶ 26    The trial court stated as follows.  In mitigation, defendant had no prior record.  His employment history and good behavior in jail were also to his credit.  However, the court disagreed with defendant's characterization of his offenses.  Addressing him, the court stated, "You told me nobody's perfect, we all make mistakes.  Certainly that is true, but a person can be far, far, far from perfect before his penis ends up in his step-daughter's mouth.  That's not just a mistake.  What you did *** violated the law—violated her body, her spirit, and her soul."  Defendant's acts had not been induced by P.C.H.; they were "100 percent on [defendant]."

¶ 27    Further, the court stated, defendant's acts were not the result of circumstances that were unlikely to recur, and it could not be said that his character and attitude indicated that he was unlikely to commit further offenses.  Clearly, defendant's offenses were not isolated incidents.  He had started with fondling the victim and progressed to sexual penetration.

¶ 28    The court sentenced defendant to consecutive 10-year prison terms for criminal sexual assault; two 6-year terms for aggravated criminal sexual abuse, to run concurrently to each other but consecutively to the remaining sentences; and 4 years for child pornography, to run consecutively to the other sentences.  Thus, the aggregate term was 30 years.

¶ 29    Defendant moved to reconsider his sentences, contending primarily that the court had placed too little weight on the mitigating circumstances of his offenses, such as the lack of physical

harm to the victim and the degree to which his acts were facilitated by her. The court denied the motion. Defendant timely appealed.

¶ 30                                      II. ANALYSIS

¶ 31    Defendant's sole contention on appeal is that the trial court abused its discretion in sentencing him to a total of 30 years' imprisonment. Defendant notes that the sentencing range for criminal sexual assault, a Class 1 felony (see 720 ILCS 5/11-1.20(b)(1) (West 2016)), is 4 to 15 years (see 730 ILCS 5/5-4.5-30(a) (West 2016)) and that the range for aggravated criminal sexual abuse, a Class 2 felony (see 720 ILCS 11-1.60(g) (West 2016)), is 3 to 7 years (see 730 ILCS 5/5-4.5-35(a) (West 2016)). Thus, his sentences for these offenses are closer to the maximums than to the minimums. Defendant concedes that his sentence for child pornography, a Class 1 felony (see 720 ILCS 5/11-20.1(c) (West 2016)), was the minimum, but he notes that it must be served consecutively to the other sentences.

¶ 32    Defendant argues that the aggregate term of 30 years is excessive in view of several significant factors in mitigation. These include his acceptance of responsibility and expressions of remorse for his actions; the fact that his conduct did not cause or threaten serious physical harm to the victim; his lack of a prior criminal or juvenile record; and his good behavior while he was in jail. For the following reasons, we conclude that the sentences must stand.

¶ 33    A trial court's sentencing decisions are entitled to great deference on review, and we may not disturb a sentence that is within the statutory range unless the court abused its discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). A sentence may not be deemed an abuse of discretion unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *Id.* at 210. We may not disturb a sentence merely because we would have balanced the factors in aggravation and mitigation differently. *Id.* at 209.

¶ 34   Here, in essence, defendant requests that we reweigh the sentencing factors and assign greater force to several that favor him. However, we decline to do so, especially as defendant's treatment of these factors is unpersuasive.

¶ 35   On the first factor in mitigation, his remorse and acceptance of responsibility, defendant's discussion is highly selective. First, although he notes his expressions of regret to Boyd in the interview and to the trial court in his allocution, he ignores important aspects of both of these encounters. During the interview, and immediately afterward, defendant did express regret. But this was only after he first denied that he had engaged in any sexual conduct with P.C.H.—an admitted lie—and next claimed that she had initiated the encounters, including the one that was captured on the video, and participated in them willingly—another lie. When Boyd showed him the video and noted that it proved that P.C.H. had been coerced and traumatized, defendant could not avoid reality any longer. Only after exhausting his potential for denial and minimization did defendant adopt a penitent spirit.

¶ 36   Defendant's statement in allocution was, if anything, even worse. Although he did ask his family for forgiveness, he also said, "what happened, it came out of my hands. Nobody's perfect. We all make mistakes." There could hardly be a more blatant attempt to minimize the seriousness of an offense (or here multiple ones) than uttering such dismissive and inappropriate banalities. The trial court recognized this and reasonably considered defendant's attitude toward his offenses as scarcely if at all mitigating.

¶ 37   Defendant's argument that his offenses did not cause the victim physical harm appears to be true, but it proves little. Sexually abusing minors does not usually cause great bodily harm but the trial court here properly considered the severe psychological harm that defendant's repeated mistreatment of his minor stepdaughter caused her. This harm was evident in the videotape of

the second criminal sexual assault. It showed not only that defendant initiated the act against her will but that he forced her by standing over her, pushing her head down, and persisting in forcing his penis into her mouth even as she cried, gagged, and repeatedly tried to tell him to stop. Further, in the recording of Aladeen's interview of P.C.H., the minor's trauma is shown by her demeanor, including crying at several points.

¶ 38    Defendant correctly notes that he had no prior record and no disciplinary problems while he was in jail. But the trial court duly noted these factors and gave them some weight in its decision. The court was not required to give these considerations more weight than it gave the seriousness of defendant's conduct. See *People v. Hernandez*, 204 Ill. App. 3d 732, 740 (1990) (most important sentencing factor is the seriousness of the offense). In this regard, it is important to observe that the court rightly considered that defendant's mistreatment of his stepdaughter was both long-standing and recurrent. By his own admission to Boyd, he committed several criminal sexual assaults for which he did not incur convictions, and these took place over the course of approximately one year before he committed the two offenses for which he was actually punished. Moreover, by his admission and P.C.H.'s testimony and out-of-court statements, defendant committed numerous acts of sexual abuse against her, dating back even further, and made at least one other unwanted sexual advance when he insisted that he kiss her.

¶ 39    Summing up, we cannot say that defendant's sentences were manifestly at variance with the spirit and purpose of the law, grossly disproportionate to the nature of his offenses, or insufficiently considerate of his questionable remorse or rehabilitative potential. Therefore, we decline to disturb them.

¶ 40                                III. CONCLUSION

¶ 41    We affirm the judgment of the circuit court of Lake County.

¶ 42    Affirmed.